IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DALE BECKETT,**
    **Plaintiff,**

                                        **Case No. C2-04-964**
**vs.**                                 **Judge Edmund A. Sargus, Jr.**
                                        **Magistrate Judge Norah McCann King**

**JACK FORD,**
    **et al.,**
        **Defendants.**

## OPINION AND ORDER

This civil rights case arises under 42 U.S.C. § 1983 in which Plaintiff, Dale Beckett, asserts

that Defendants have violated his constitutional rights in connection with his murder prosecution and

conviction in Lucas County, Ohio. Plaintiff's murder conviction was subsequently vacated pursuant

to federal habeas corpus. Plaintiff alleges that the prosecuting and investigating authorities conspired

with the primary witness in his murder case to improperly convict him. Plaintiff also alleges that

the State Defendants, should have, but did not, release him from custody following the grant of his

petition for writ of habeas corpus.

This matter is now before the Court for consideration of the Motion for Summary Judgment

filed by the Defendants employed by the State of Ohio, including the Director of the Ohio

Department of Rehabilitation and Corrections, Reginald Wilkinson, Gary Croft, Jim Bedra, Sandra

Crockett, Peter Davis, Kathleen Kovach, Robert Maszczynski, Cynthia Mauser, Warden Betty

Mitchell and Jessee Williams (hereinafter "State Defendants"). All parties have agreed that, should

the claims against the State Defendants be dismissed by the Court on this Motion for Summary

Judgment that the case should be transferred to the Northern District of Ohio for further proceedings.

For the reasons that follow, the State Defendants' Motion for Summary Judgment is granted and the

case is transferred to the Northern District of Ohio.

## I.

Plaintiff, Dale Beckett, was an inmate of the State of Ohio Department of Rehabilitation and Correction following his conviction for murder with firearm specification. (*State v. Beckett*, Lucas County Court of Common Pleas Case No. 96-7168 (hereinafter "Case No. 96-7168.")  Plaintiff was sentenced by the Lucas County Court of Common Pleas to an indefinite term of incarceration of fifteen (15) years to life plus a consecutive three (3) year sentence for the gun specification. (Complaint, ¶ 64, Defs' Mot., Exh. A, Judgment Entry, dated Feb. 18, 1997.)[1]

Following denial of his appeals in the state court system, Plaintiff initiated a habeas corpus proceeding on July 16, 2001 in the United States District Court for the Northern District of Ohio. (*Beckett v. Haviland*, Case No. 3:01-cv-07374 (N.D. Ohio 2001) (Complaint, ¶ 82).)  Judge Potter conditionally granted Plaintiff's Petition for Writ of Habeas Corpus by Opinion and Order dated June 26, 2002.

Following appeal, the Sixth Circuit Court of Appeals affirmed the decision of the District Court. As a result of these decisions, Plaintiff was required to be released from further custody on the murder charge in Case. No. 96-7168, unless he was tried again in the state court within ninety (90) days from the date of the final order.  Because the Sixth Circuit's final order and mandate was filed October 20, 2003, Plaintiff was scheduled to be released on or about January 18, 2004, unless the prosecutor elected to retry him.  (Defs' Mot, Exh. B, Potter J.'s decision, at pp. 23-24).

---

[1]      On appeal in the state courts, Plaintiff's conviction was affirmed. (*State v. Beckett*, Lucas Ct. App. No. L-97-1073 and L-98-1272) (Complaint, ¶ 79). The Ohio Supreme Court did not accept Beckett's appeal, finding that it did not involve a substantial state constitutional question. (*State v. Beckett*, 89 Ohio St.3d 1426, (2000). (Complaint, ¶ 80.))

The Lucas County Prosecuting Attorney chose not to re-try Plaintiff on the murder charge. Plaintiff, however, was not immediately released from the custody of the Ohio Department of Rehabilitation and Correction (hereinafter "DRC"). Defendants contend, and the record confirms, that Plaintiff was also serving a sentence on an unrelated crime that the state court imposed prior to his murder conviction.

A review of the record reveals that, following his conviction for murder, Plaintiff's precise sentenced was for an indefinite term of fifteen (15) years to life for the offense of murder and "further for a period of 3 years of actual incarceration for the firearm specification, to be served consecutively to the sentence imposed for Murder. *Further, this case ordered served consecutively to the sentence imposed in case no. CR-96-5211.*" (Defs' Mot., Exh. A, Journal Entry, emphasis added.) Thus, Plaintiff was to serve his sentence consecutively with a sentence for a 1996 crime relating to carrying a concealed weapon.[2]

Because the Lucas County Prosecuting Attorney decided not to re-try Plaintiff, on November 19, 2003, the Lucas County Court of Common Pleas entered a *nolle prosequi* for Beckett's murder conviction, in Case No. 96-7168. The court specifically ordered Plaintiff "immediately returned to the Allen Correctional Institution to serve the balance of the sentence imposed on April 29, 1996, in Case No. CR96-5211." (Defs' Mot., Exh. F.)

---

[2]     As for the previous crime and sentence, the record reflects that, on April 30, 1996, Plaintiff received an indefinite term of incarceration for a period of two to ten (2-10) years for a conviction of carrying a concealed weapon, receiving stolen property, and having a weapon while under disability with specifications attached to each count. (*State v. Beckett*, Lucas County Court of Common Pleas Case No. 96-5211A)(hereinafter "Case No. 96-5211").)

On December 12, 2003, once Plaintiff was transported back to Allen Correctional Institution, the Bureau of Sentence Computation recalculated his sentence for carrying a concealed weapon. (Defs' Mot., Exh. G, Bureau of Sentence Computation Update and Correction form; Exh. L, Affidavit of Adams.)  The Bureau of Sentence Computation removed the murder conviction from its records, completed a new computation for Plaintiff's remaining two to ten year sentence in Case No. 96-5211 and recalculated Plaintiff's new release date. Plaintiff's recalculated maximum expiration of sentence was April 24, 2006.

On January 21, 2004, Plaintiff had a parole hearing on Case No. 96-5211 on the conviction for carrying a concealed weapon, receiving stolen property, and having a weapon while under disability.  Plaintiff's case was referred to the Central Office Board Review ("COBR"). (Defs' Mot, Exhs. H & I, Ohio Parole Board Decisions.)  On review, the full COBR held that "this inmate is suitable for release at this time.  Inmate's conviction recently overturned on appeal. Has served considerable time and no aggravating factors to warrant additional time." (Defs' Exh. I.) The COBR recommended that Plaintiff be released on parole on March 22, 2004.  Plaintiff was, in fact, paroled on March 22, 2004. (Complaint, ¶ 87, 104).

Plaintiff notes that the Parole Board's Guideline for the offense of carrying a concealed weapon while under a disability scores in Category 4. Because he had no prior criminal history, Plaintiff argues that his risk score and offense behavior score converge on the Parole Board grid, yielding a range of eighteen (18) to twenty-four (24) months. Plaintiff points out that he began serving his sentence on April 30, 1996 and that, on October 30, 2003 when the Court of Appeals for the Sixth Circuit issued its mandate, he had served six (6) years and seven (7) months.  Because the federal courts had ordered that Plaintiff be given a new trial within ninety (90) days or be released,

and the prosecutor filed the *nolle prosequi*, dismissing the murder charge on November 19, 2003, Plaintiff contends that he should have been released as soon as possible after the charge was dismissed. Plaintiff calculates that, on November 19, 2003, had served seven (7) years, six (6) months and twenty-one (21) days on the conviction for carrying a concealed weapon. He maintains that the average time served for the crime of carrying a concealed weapon with a disability is three years. Plaintiff's chief argument is that the Parole Board had an obligation to release him no later than the expiration of the 90 days following the mandate from the Sixth Circuit and the fact that Plaintiff was not released until March 22, 2004 violated his constitutional rights.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156

F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).  Because Plaintiff has failed to demonstrate that the State Defendants deprived him of a federally protected constitutional or statutory right, the Motion for Summary Judgment will be granted.

Plaintiff's argument that the State Defendants' failure to release him after the murder sentence was vacated fails to apprehend that, after the entry of the *nolle prosequi* for his murder conviction, the state court specifically ordered Plaintiff immediately returned to correctional institution to serve the balance of the sentence imposed on April 29, 1996 for carrying a concealed weapon.  Thus, following the *nolle prosequi* hearing, Plaintiff was no longer serving a sentence for his murder conviction.  He was required, however, to return to the prison for the remainder of his two to ten year sentence.  Although this sentence in Case No. 96-5211 could have been extended until April 26, 2006, Plaintiff was released on parole on March 22, 2004.

Plaintiff's chief argument is that the "average" term for a crime such as his for carrying a concealed weapon with a disability was three years, but that he served nearly eight years.  Plaintiff apparently argues that the parole board had an obligation to provide an even earlier release.  As a convicted prisoner, however, Plaintiff has no constitutional or inherent right to be paroled before the expiration of a valid sentence.  The Supreme Court has made it clear that a mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest; the prisoner "must, instead, have a legitimate claim of entitlement to it." *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Inmates of Orient Corr. Inst. v. Ohio Adult Parole Authority*, 929 F.2d 233 (6th Cir. 1991).

-7-

The law of Ohio gives a convicted person no legitimate claim of entitlement to parole before the expiration of a valid sentence of imprisonment. This remains true even after the Ohio Adult Parole Authority has approved the prisoner's release on parole on or after a specified date.  The decision whether or not to grant parole to an Ohio prisoner lies wholly within the discretion of the Adult Parole Authority.  *Jago v. Van Curen*, 454 U.S. 14 (1981).  Similarly, because Plaintiff has no constitutional or statutory right to parole, he has no similar right to an earlier consideration of parole. *Vaughn v. Ohio Adult Parole Authority* , 85 Ohio St.3d 378 (Ohio 1999).

In short, the Court finds that Plaintiff has not demonstrated that the State Defendants violated his constitutional rights to support a claim under Section 1983.  Accordingly, the State Defendants' Motion for Summary Judgment is granted.[3]

## IV.

Consistent with the foregoing, the State Defendants' Motion for Summary Judgment (Doc. #35) is **GRANTED**.  By agreement of the remaining parties, and pursuant to 28 U.S.C. § 1404(a) "for the convenience of the parties and witnesses, in the interest of justice," the Court hereby **TRANSFERS** this civil action to the Northern District of Ohio.

**IT IS SO ORDERED.**

3-27-2006
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[3]       Because the Court finds no violation of Plaintiff's federally protected rights under Section 1983, Defendants Wilkinson's and Williams' arguments regarding *respondeat superior*, and that they cannot be held liable short of directly participating in the constitutional deprivation, need not be addressed.