IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DALE BECKETT,

                Plaintiff,                Case No. 3:06 CV 1319

-vs-

                                        <u>MEMORANDUM OPINION</u>

JACK FORD, et al.,

                Defendant.

KATZ, J.

This case involves Plaintiff Dale Beckett's civil rights claims filed under 42 U.S.C. § 1983, and under state law claims of bad faith and unlawful imprisonment. This matter is before the Court pursuant to Plaintiff's objections (Doc. 103) to the July 30, 2007 Report and Recommendation (R & R) of United States Magistrate Judge Vernelis K. Armstrong (Doc. 102). Magistrate Armstrong recommends that this Court grant Defendant's motion for summary judgment (Doc. 63), and deny Plaintiff's motion to strike (Doc. 92), Plaintiff's motion to compel discovery (Doc. 78), and Defendant's motion to stay proceedings (Doc. 64).

In accordance with *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) and *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of the Magistrate's findings to which the plaintiff objects.

**I.    Background**

The Court hereby adopts the Magistrate's findings of facts as provided in the R & R, and as follows:

> Plaintiff resides in Toledo, Lucas County, Ohio (Docket No. 1, ¶ 3).
> Defendant Anderson is an Assistant Lucas County Prosecutor, and was the lead

counsel in the *State of Ohio v. Dale Beckett*, a case in which Plaintiff was prosecuted for the murder of Ronald Cunningham (Docket No. 1, ¶ 7). Sergeant Steven Forrester (Defendant Forrester) of the Toledo Police Department was the lead investigator of the Ronald Cunningham's murder (Docket No. 1, ¶ 19).

On February 17, 1996, Ronald Cunningham was found dead, from a gunshot wound, in a vacant lot on Prospect Street in Toledo, Ohio (Docket No. 1, ¶ 18). Matthew Williams, Plaintiff's long time acquaintance, entered prison on February 25, 1996 (Docket No. 1, ¶ 46). In matters unrelated to the instant action, Plaintiff was convicted of having a weapon under disability, under OHIO REV. CODE § 2923.12, and entered prison on or about May 5, 1996 (Docket No. 1, ¶ 47). Plaintiff and Matthew Williams were cell mates at the Ohio Department of Rehabilitation and Corrections (ODRC) Reception Center, in Orient, Ohio (Docket No. 1, ¶ 46). Plaintiff was indicted on September 30, 1996 in Lucas County for the murder of Ronald Cunningham. The indictment carried a firearm specification (Docket No. 1, at ¶ 25).

During the murder investigation, Matthew Williams called Defendant Forrester and claimed that Plaintiff had confessed to him to killing Ronald Cunningham (Docket No. 1, ¶ 51). In exchange for this information, Defendants Forrester and Anderson promised to write letters to the parole board attesting to Matthew Williams' cooperation (Docket 35-3, p. 8). Plaintiff alleges that at this point, Defendants Anderson and Forrester and Matthew Williams conspired to provide false testimony to convict Plaintiff of Ronald Cunningham's murder (Docket No. 1, ¶ 53).

At trial, Matthew Williams testified that Plaintiff had confessed to killing Ronald Cunningham. *Ohio v. Beckett*, 2000 Ohio App. LEXIS 732, *6 (2000). Defendant Anderson did not disclose the agreements to write a letter to the parole board on Mr. Williams' behalf (Docket 35-3, p. 8).

Norma Eaton, an alleged prostitute, placed Plaintiff in the vicinity of the crime (Docket No. 1, ¶ 37). Sheila Burton McNeil, a purported drug dealer, was in the vicinity and heard the gunshot (Docket No. 1, ¶ 41). Plaintiff alleges that Defendants Anderson and Forrester used as substantial leverage the possibility of criminal prosecution against these women to mold their testimony (Docket No. 1, ¶s 38, 39, 43).

On February 13, 1997, a jury found Plaintiff guilty of murder with a firearm specification. (Docket No. 63, p. 7l). Plaintiff was sentenced to a term of 15 years to life imprisonment for murder with a consecutive term of three years for the firearm specification (Docket No. 63, p. 71). Plaintiff moved for a new trial based upon an affidavit in which Mr. Williams recanted his prior testimony. Specifically, he claims that Defendant Forrester threatened him, he had no knowledge of Plaintiff's involvement in the crime; his testimony was rehearsed with Defendant Anderson; and he was promised to be released from prison if he cooperated (Docket No. 63, p. 71). At a hearing on the motion, Mr. Williams asserted his Fifth Amendment privilege and refused to testify (Docket no. 63, p. 71). Defendant Forrester testified that Mr. Williams implicated Plaintiff before the agreement to

write the letter to the parole board and that there was no promise to help Mr. Williams get out on parole (Docket No. 63, p. 71). Defendant Forrester and another detective also testified that Mr. Williams contacted them the morning of the hearing and stated that he had signed the affidavit because he was mad that testifying against Plaintiff did not aid his parole and that he was afraid that Plaintiff was making arrangements to have him harmed (Docket No. 63, p. 8). The trial court held that Mr. Williams' recantation was not credible and that even if his testimony was false, it did not materially affect the outcome of the trial (Docket No. 63). This decision was affirmed on appeal. *Ohio v. Beckett*, 2000 Ohio App. LEXIS 732 (2000).

Subsequently, the United States District Court for the Northern District of Ohio granted, and the Sixth Circuit Court of Appeals affirmed, Plaintiff's petition for Habeas Corpus on the grounds that the prosecutor's failure to correct this testimony could have affected the judgment of the jury. *Beckett v. Haviland*, 76 Fed. Appx. 726, 2003 U.S. App. Lexis 20025 (6th Cir. 2003). On June 26, 2002, the District Court ordered that Plaintiff be released or granted a new trial within ninety days of the order (Docket 35-3, p. 23). The Sixth Circuit Court affirmed that order on September 26, 2003. *Id.* at 726. On November 19, 2003, the State trial court dismissed the charges against Plaintiff (Docket No. 63, p. 9). Plaintiff was released from prison on March 22, 2004 (Docket No. 1, ¶ 87).

Plaintiff filed a complaint in the United States District Court for the Southern District of Ohio on October 6, 2004 alleging: (1) a violation of his due process rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and (2) state law claims for bad faith, unlawful imprisonment and conspiracy (Docket No. 1, ¶s 99, 101, 103 & 106 and Docket Nos. 50-3 & 50-4). The defendants in this action included members of the Ohio parole board, the director of the Ohio Department of Rehabilitation and Correction, the Warden at the Allen Correctional Institution, Lucas County Commissioners, the Mayor of Toledo, Chris Anderson, and Steven Forrester (Docket No. 1, p. 1-4). The Southern District Court granted summary judgment in favor of all defendants employed by the State of Ohio on May 30, 2006. *Beckett v. Ford*, 2006 U.S. Dist. LEXIS 39780 (S.D. Ohio 2006). The case was then transferred to the Northern District of Ohio (Docket No. 43). The County Defendants, Harry Barlos, Tina Skeldon Wozniak, Maggie Thurber and Chris Anderson, filed for a Motion for Summary Judgment on January 30, 2007 (Docket No. 63). The Court granted the unopposed Motion to Dismiss, with prejudice, as to defendants Harry Barlos, Tina Skeldon Wozniak and Maggie Thurber (Docket No. 72).

R & R at 2-4.

Plaintiff filed this civil rights action pursuant to 42 U.S.C. §1983, alleging that Defendant violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by (1)

3

conspiring to convict Plaintiff of a crime he did not commit, and conspiring to coerce Matthew Williams to testify falsely against Plaintiff; and (2) coercing Matthew Williams to testify falsely against Plaintiff. Plaintiff also asserted similar civil rights claims under state law. Defendant Anderson filed for summary judgment on these claims, and the parties have filed other various motions relating to the claims.

Upon review of Magistrate Armstrong's recommendations, this Court hereby grants Defendant's motion for summary judgment (Doc. 63) and denies the other motions filed by the parties as moot.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

The Court herein addresses Plaintiff's objections to the R & R. The Court agrees with the Magistrate and notes that the well-reasoned R & R provides a thorough analysis on these issues, and the same is hereby adopted.

**A. Absolute prosecutorial immunity from section 1983 claims against Defendants in individual capacity**

Plaintiff brings suit against Defendant police officers in their individual capacity for civil rights violations pursuant to 42 U.S.C. §1983. Plaintiff alleges that Defendants violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by (1) conspiring to convict Plaintiff of a crime he did not commit, and conspiring to coerce Matthew Williams to testify falsely against Plaintiff; and (2) coercing Matthew Williams to testify falsely against Plaintiff. Defendants filed for summary judgment on these claims. The Magistrate found that Defendants' alleged conduct was subject to absolute immunity, and thus recommended that Defendants' summary judgment motion be granted. This Court agrees with the Magistrate.

"42 U.S.C. §1983 provides that '[e]very person' who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983). Plaintiff argues that evidence of Defendant's conspiracy and coercion – which led the District Court to grant Plaintiff's petition for habeas corpus – makes Defendants accountable for damages under section 1983.

Despite the general liability imposed by 42 U.S.C. § 1983, a prosecutor's liability under the statute is limited. As explained by the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409 (1976),

6

> The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment.

*Id*. at 427. As a result of these considerations, the *Imbler* Court held that the common law principal of absolute immunity for prosecutors applies to section 1983 claims.

While prosecutors enjoy a level of absolute immunity against section 1983 claims, this immunity only extends to conduct related to "initiating a prosecution and . . . presenting the state's case . . . ." *Id*. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."[1] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 494-96 (1934)). Therefore, the determination of Defendants' motion for summary judgment turns on whether Defendant Anderson's conduct occurred in his role as an advocate for the State, or whether it instead constituted an administrative or investigatory function. *See Skinner v Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (citing *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) *reh'g denied* (2004) (emphasis omitted)) (holding that "'[t]he analytical key to prosecutorial immunity,' we have explained, 'is advocacy – whether

---

[1] If a prosecutor's wrongful conduct constitutes an administrative or investigative function instead of one of advocacy, then the prosecutor is only entitled to qualified immunity. *Buckley*, 509 U.S. 259, 273 (citing *Imbler*, 424 U.S. at 431, n.33). "Qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Logdon v. Haines*, 492 F.3d 334 (6th Cir. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

7

the actions in question are those of an advocate.'"); *see also Skinner*, 463 F.3d 518, 525 (citing *Buckley*, 509 U.S. 259, 273 (1993)) (noting that "[i]f the challenged actions of the prosecutor were not performed in his role as advocate, if they 'do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,' then only '[q]ualified immunity' applies").

In *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003), the Sixth Circuit helped clarify when a prosecutor's conduct implicates his role as an advocate, and when it implicates administrative or investigative functions. Conduct occurring in the role as an advocate includes: malicious prosecution, *id*. at 797 (citing *Burns*, 500 U.S. 478, 485 n.4); appearances at probable cause and grand jury hearings, *id*. (citing *Burns*, 500 U.S. 478, 487, n.8); professional evaluation of the evidence assembled by the police, and appropriate presentation of that evidence at trial or before the grand jury, *id*. (citing *Buckley*, 509 U.S. 259, 273); preparation of witnesses for trial, *id*. (citing *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)); and knowing presentation of false testimony at trial, *id*. (citing *Imbler*, 424 U.S. 409, 413, 430; *Buckley*, 509 U.S. 259, 267 n.3). Prosecutorial conduct that occurs as part of an administrative or investigative function includes: giving legal advice to police, *id*. at 798 (citing *Burns*, 500 U.S. 478, 496); authorizing warrantless wiretaps in the interest of national security, *id*. (citing *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985)); statements made in an affidavit supporting an application for an arrest warrant, *id*. (citing *Fletcher v. Kalina*, 522 U.S. 118, 139 (1997)); and out-of-court statements made by a prosecutor at a press conference, *id*. (citing *Buckely*, 509 U.S. 259, 277-78).

In this case, the Magistrate found that the coercive conduct in question resulted from Defendant Anderson "acting as an advocate for the state" in that he was "evaluating evidence, interviewing witnesses and preparing witnesses for trial." (Docket No. 102, p. 12). This Court

agrees. Even if it were true that Defendant coerced Williams to testify against Plaintiff, this conduct occurred as a result of Defendant's preparation for "initiation of a prosecution [and] . . . judicial proceedings." *Buckley*, 509 U.S. 259, 273 (citing *Burns*, 500 U.S. 478, 494-96). Defendant Anderson's conduct resulted from his role as an advocate, and he is thus shielded by absolute immunity from liability under 42 U.S.C. § 1983.

In addition to immunity for any actually coercive conduct, claims of conspiracy to coerce Williams' testimony, or conspiracy to convict Plaintiff of a crime he did not commit, are also protected against by absolute immunity.[2] This is not the first time conspiracy allegations have been examined for application of absolute immunity. In *Buckely*, the Supreme Court considered whether an alleged prosecutorial conspiracy to manufacture false evidence was shielded by absolute immunity. *Buckley*, 509 U.S. 259, 272. The Court concluded that it was not. However, its holding was predicated on the finding that "*[u]nder these circumstances*, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates." *Id*. at 275 (emphasis added). Thus, *Buckley* clearly indicates that conspiratorial acts by prosecutors can be covered by absolute immunity, so long as they result from the prosecutor's role as an advocate. *See id.* Therefore, any alleged conspiratorial conduct on the part of Defendant is also shielded by absolute immunity.

Plaintiff strenuously objects to extending absolute immunity to Defendant's conduct in this case. Specifically, Plaintiff claims that the Sixth Circuit in *Joseph v. Patterson*, 795 F.2d 549 (6th

---

[2]

Magistrate Armstrong's R & R did not grant Defendant's motion for summary judgment after analyzing the conspiracy claims for absolute immunity. Instead, Magistrate Armstrong granted Defendant's motion based on the merits of the conspiracy claim. (Dockett No. 102, p. 9-10). However, an analysis on the merits is not necessary in this instance, as any claims of conspiracy under these facts are protected by absolute immunity.

Cir. 1986), held that "prosecutors who supervise and participate in an unconstitutional police interrogation of a criminal suspect are not entitled to absolute immunity." (Dockett No. 103, p. 11). Plaintiff's statement is a mischaracterization of that case. In *Joseph*, the court did note as dicta that the Ninth Circuit heard a case in which it held that a prosecutor's supervision of an unconstitutional interrogation was not subject to absolute immunity. *Joseph*, 795 F.2d 549, 555 (citing *Robichaud v. Ronan*, 351 F.2d 533, 536-37 (9th Cir. 1965)). Despite this reference, however, the *Joseph* court's analysis was rooted in whether the prosecutor's conduct related to an advocacy role, *see id*. at 555 (citing *Forsyth v. Kleindienst*, 599 F.2d 1203, 1216 (3d Cir. 1979)), not on whether the prosecutor did or did not commit a certain specified act. *Id*. Therefore, Plaintiff's objections are unpersuasive, and this Court finds that Defendant Anderson's conduct was within the role of an advocate. As such, Defendant is shielded by absolute immunity, and Defendant's motion for summary judgment on section 1983 claims in his individual capacity is hereby granted.

### B. Immunity from section 1983 claims against Defendants in official capacity

Plaintiff also sues Defendants in their official capacities for violation of section 1983. Defendants have filed for summary judgment. The Magistrate found Plaintiff's claims to be barred by the Eleventh Amendment, and therefore recommended that Defendants' motion for summary judgment be granted. This Court agrees.

Pleading official capacity is another way of stating a claim against an entity of which a defendant is an agent, official, or employee. *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985). Because a prosecutor acts as a state agent when prosecuting criminal charges, a suit against a prosecutor in his or her official capacity is to be treated as a suit against the state. *See Will v.*

10

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (noting that a county prosecutor is an officer of the court, and when prosecuting state charges, he is acting on behalf of the state). The Eleventh Amendment immunizes states from lawsuits. *Seminole Tribe of Fla. V. Fla.*, 517 U.S. 44, 54 (1996). Therefore, a section 1983 is not cognizable against a state. *See Will*, 491 U.S. 58, 71.

Citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Plaintiff asserts that Defendant is not entitled to Eleventh Amendment immunity in his official capacity. (Doc. 103, p. 12). *Monell* held that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. 658, 691. Plaintiff relies on this language to argue that "[w]hen the State uses its power to get indictments against people and convictions . . .the State is not entitled to claims of Official Capacity Immunity." (Doc. 103, p. 12-13). Plaintiff does not dispute that when a county prosecutor is prosecuting state charges, the prosecutor is acting on behalf of the state. *Pusey*, 11 F.3d 652, 657-58. Nor does Plaintiff dispute that suits against states are barred by Eleventh Amendment immunity. *Seminole Tribe*, 517 U.S. 44, 54. Therefore, notwithstanding Plaintiff's objections, this Court finds that Plaintiff's section 1983 claims against Defendant in his official capacity are barred by the Eleventh Amendment. Accordingly, Defendant's motion for summary judgment on this issue is hereby granted.

### C. Absolute Prosecutorial Immunity for State Law Claims

Plaintiff has also sued Defendant for civil rights violations under Ohio law. As noted by the Magistrate, "Plaintiff does not designate what claims, if any, were made pursuant to Ohio

11

law." (Doc. 102, p. 13). Therefore, this Court will construe Plaintiff's state law claims as they were construed by the Magistrate. The allegations are: "First, Defendant Anderson's failure to obtain Plaintiff's release from prison on October 27, 2003, constitutes unlawful imprisonment. Second, Defendant Anderson's overt actions and material omissions constitute bad faith." (Doc. 102, p. 13). Defendant filed for summary judgment on these claims, and the Magistrate, finding Defendant's conduct to be covered by absolute immunity under Ohio law, recommended that Defendant's motion for summary judgment be granted. This Court agrees with the Magistrate.

The Ohio Supreme Court has held that "independence in decision-making is essential to preserving the integrity of the judicial process." *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449 (1983). Moreover, "absolute immunity is necessary to insure that judges, prosecutors, lawyers and witnesses can perform their respective functions in an adjudicatory proceeding without harassment or fear of consequences." *Id*. Thus, prosecutors are afforded absolute immunity under Ohio law "when their activities are 'intimately associated with the judicial phase of the criminal process.'" *Id*. (citing *Imbler*, 424 U.S. 409, 430). More specifically, prosecutors are entitled to absolute immunity when their conduct is quasi-judicial, and thus deals with the initiation of prosecution and presentation of the State's case. *Id*. (citing *Imbler*, 424 U.S. 409, 431). "However, 'absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions.'" *Id*. (citing *Dellums v. Powell*, 660 F.2d 802, 805 (D.C. 1981)).

In determining whether a prosecutor's conduct is sufficiently quasi judicial to be covered by absolute immunity, courts must apply a "functional analysis of [the prosecutor's] activities, rather than simply stating that he is a prosecutor whose status entitles him to absolute immunity."

12

*Id*. (citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982)). In *Bender v. Diemert*, 1993 Ohio App. LEXIS 2160 (Ohio Ct. App. April 22, 1993), a prosecutor, prior to getting an indictment, was coercing and intimidating testimony, *id*. at *9-*11, including "intimidating [a witness] into signing an affidavit implicating Appellants." *Id*. at *12. Despite this, the Court found the prosecutor's conduct was sufficiently quasi-judicial to be covered by absolute immunity under Ohio law. *Id*. at *12-*14.

Similarly, Defendant's conduct in this case is covered by absolute immunity. Even if it were true that Defendant coerced, and conspired to coerce, Williams into testifying against Plaintiff, this conduct occurred as a result of Defendant's prosecution of Plaintiff, and is therefore sufficiently quasi-judicial to be shielded by absolute immunity under Ohio law.

Plaintiff objects to the finding of absolute immunity for Defendant's conduct by citing the Political Subdivision Tort Liability Chapter of the Ohio Revised Code. OHIO REV. CODE ANN. § 2744.03 (2007). This Chapter enumerates a list of "defenses or immunities [that] may be asserted to establish nonliability . . . in a civil action brought against a political subdivision or an employee of a political subdivision." *Id*. at § (A)(1). Plaintiff asserts that 2744.03(A)(6) prohibits a finding of immunity. Division (A)(6) states that:

> In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division . . . the employee is immune from liability unless one of the following applies:
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner . . .

13

*Id*. at § (A)(6).  Plaintiff contends that Defendant's conduct was outside the scope of his official responsibilities and in bad faith.  (Dockett No. 103, p. 13).  Plaintiff contends that division (A)(6) prohibits Defendants from being protected by absolute immunity.  This argument is incorrect.

Division (A)(6) clearly states that it operates to provide immunity *in addition* to any immunity provided by division (A)(7).  Division (A)(7) provides that "an employee who is a county prosecuting attorney . . . is entitled to any defense or immunity available at common law or established by the Revised Code."  *Id*. at § (A)(7).  As outlined above, the Ohio Supreme Court has unmistakably held that prosecutors are protected by absolute immunity so long as their conduct is "'intimately associated with the judicial phase of the criminal process.'"  *Willitzer*, 6 Ohio St. 3d 447, 449 (citing *Imbler*, 424 U.S. 409, 430).  Therefore, contrary to Plaintiff's assertions, division (A)(6) serves to provide immunity *beyond* that provided by common law.It does not operate to diminish the absolute prosecutorial immunity established by the Ohio Supreme Court in *Willitzer*, supra.  Therefore, Defendants' conduct is shielded by absolute immunity under Ohio law.

### D. Motions to compel, strike, and stay proceedings

Because Defendant's motion for summary judgment is granted herein, denies Plaintiff's motion to strike (Doc. 92), Plaintiff's motion to compel discovery (Doc. 78), and Defendant's motion to stay proceedings (Doc. 64) as moot.

### IV. Conclusion

For the reasons discussed herein, and more thoroughly in the Report and Recommendation of Magistrate Armstrong, this Court hereby adopts such R & R (Doc. 102); grants Defendants' motion for summary judgment (Doc. 63); and denies Plaintiff's motion to strike (Doc. 92),

Plaintiff's motion to compel discovery (Doc. 78), and Defendants' motion to stay proceedings (Doc. 64) as moot.[3]

    IT IS SO ORDERED.

                                                S/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE

---

[3] In his reply brief to Defendants' response to the original objections, Plaintiff attempts to request that this Court conduct an analysis under Fed. R. Civ. P. 54(b) for certification of immediate appealability. Doc. 105, p.6. Such a request must be made by motion, not posed as a request in a reply briefing on the merits, and is thus not properly before the Court.