IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DALE BECKETT,

                  Plaintiff,              Case No. 3:06 CV 1319

-vs-                                      MEMORANDUM OPINION

JACK FORD, et al.,

                  Defendant.

KATZ, J.

This case involves Plaintiff Dale Beckett's civil rights claims filed under 42 U.S.C. § 1983, and under state law claims of bad faith, unlawful imprisonment, and civil conspiracy. The following motions are pending: (1) Defendants Mayor Jack Ford and Sergeant Steven Forrester's motion for summary judgment (Doc. 124), Plaintiff's response (Doc. 127), and Defendants' reply (Doc. 124); (2) Plaintiff's motion to strike Defendants' motion for summary judgment (Doc. 133); (3) Plaintiff's motion to declare witness Norma Eaton absent and unavailable to give testimony at trial and enter into evidence her *ex parte* affidavit (Doc. 117); (4) Defendants' motion in limine to exclude Norma Eaton's *ex parte* affidavit (Doc. 122), Plaintiff's opposition (Doc. 123), and Defendants' reply (Doc. 126); and (5) Plaintiff's motion to admit Norma Eaton's *ex parte* statement as a statement against penal interest (Doc. 123).

**I. Background**

Almost fourteen years ago, Plaintiff was prosecuted for the murder of Ronald Cunningham. Sergeant Steven Forrester of the Toledo Police Department was the lead investigator of Cunningham's murder.

On February 17, 1996, Cunningham was found dead from a gunshot wound in a vacant lot on Prospect Street in Toledo, Ohio. Matthew Williams, Plaintiff's now deceased long time

acquaintance, entered prison on February 25, 1996. In matters unrelated to the instant action, Plaintiff was convicted of having a weapon under disability, under OHIO REV. CODE § 2923.12, and entered prison on or about May 5, 1996. Plaintiff and Williams were cell mates at the Ohio Department of Rehabilitation and Corrections Reception Center, in Orient, Ohio. Plaintiff was indicted on September 30, 1996 in Lucas County for the murder of Cunningham. The indictment carried a firearm specification.

During the murder investigation, Williams called Forrester and claimed that Plaintiff had confessed to him to killing Ronald Cunningham. In exchange for this information, Defendant Forrester and former Defendant Lucas County Prosecutor Chris Anderson promised to write letters to the parole board attesting to Williams's cooperation.

At trial, Williams testified that Plaintiff had confessed to killing Cunningham. *Ohio v. Beckett*, 2000 Ohio App. LEXIS 732, *6 (2000). Norma Eaton, an alleged prostitute, placed Plaintiff in the vicinity of the crime. *Id.* Anderson did not disclose the agreements to write a letter to the parole board on behalf of Williams.

On February 13, 1997, a jury found Plaintiff guilty of murder with a firearm specification. Plaintiff was sentenced to a term of 15 years to life imprisonment for murder with a consecutive term of three years for the firearm specification. Plaintiff moved for a new trial based upon an affidavit in which Williams recanted his prior testimony. Specifically, Williams claimed that Defendant Forrester threatened him, he had no knowledge of Plaintiff's involvement in the crime, his testimony was rehearsed, and he was promised to be released from prison if he cooperated. At a hearing on the motion, Williams asserted his Fifth Amendment privilege and refused to testify. Defendant Forrester testified that Williams implicated Plaintiff before the agreement to write the letter to the parole board and that there was no promise to help Williams get out on parole.

Defendant Forrester and another detective also testified that Williams contacted them the morning of the hearing and stated that he had signed the affidavit because he was mad that testifying against Plaintiff did not aid his parole and that he was afraid that Plaintiff was making arrangements to have him harmed. The trial court held that Williams' recantation was not credible and that even if his testimony was false, it did not materially affect the outcome of the trial. This decision was affirmed on appeal. *Ohio v. Beckett*, 2000 Ohio App. LEXIS 732 (2000).

Subsequently, the United States District Court for the Northern District of Ohio granted, and the Sixth Circuit Court of Appeals affirmed, Plaintiff's petition for Habeas Corpus on the grounds that the prosecutor's failure to correct the inaccurate testimony at trial concerning the deal struck between Williams and the prosecutor could have affected the judgment of the jury. *Beckett v. Haviland*, 76 Fed. Appx. 726, 2003 U.S. App. LEXIS 20025 (6th Cir. 2003). On June 26, 2002, the District Court ordered that Plaintiff be released or granted a new trial within ninety days of the order. The Sixth Circuit Court affirmed that order on September 26, 2003. *Id*. at 726. On November 19, 2003, the State trial court dismissed the charges against Plaintiff. Plaintiff was released from prison on March 22, 2004.

Plaintiff filed a complaint in the United States District Court for the Southern District of Ohio on October 6, 2004 alleging: (1) a violation of his due process rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and (2) state law claims for bad faith, unlawful imprisonment, and conspiracy. The defendants in this action included members of the Ohio parole board, the director of the Ohio Department of Rehabilitation and Correction, the Warden at the Allen Correctional Institution, Lucas County Commissioners, the Mayor of Toledo, Chris Anderson, and Steven Forrester. The Southern District Court granted summary judgment in favor of all defendants employed by the State of Ohio on May 30, 2006. *Beckett v. Ford*, 2006

3

U.S. Dist. LEXIS 39780 (S.D. Ohio 2006). The case was then transferred to the Northern District of Ohio. Since then, all of the defendants have been dismissed except City of Toledo, Ford, and Forrester.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

In their motion for summary judgment, Defendants claim that they are immune from liability. Specifically, Defendants argue: (1) with regard to § 1983 claims against Defendants in their official capacities, Plaintiff has failed to establish that a policy or custom of the City of Toledo played a part in the violation of federal law; (2) with regard to the § 1983 malicious prosecution claim against Defendant Forrester in his individual capacity, Forrester's investigation returned evidence sufficient to establish probable cause; and (3) Defendants are immune from the state law claims.

Plaintiff responds that: (1) Lucas County and the City of Toledo have a policy or custom to acquire information illegally in their prosecution of defendants; (2) Plaintiff has provided sufficient evidence to create genuine issues of material fact on his claim for malicious prosecution; and (3) Defendants are not immune from the state law claims.

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides, in relevant part: "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…." § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

A plaintiff bringing a claim under § 1983 must establish that the defendants acted under color of state law and that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or federal laws. *Haag v. Cuyahoga County*, 619 F. Supp. 262, 271 (N.D. Ohio 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) aff'd, 798 F.2d 1414 (6th Cir. 1986)). No dispute exists that Defendants acted under color of state law. Accordingly, Plaintiff must present evidence that Defendants violated a constitutional right.

#### 1. Official Capacity

Courts treat suits against municipal officials in their official capacity as suits against the municipality. *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). As a result, Plaintiff must show that a policy or custom played a part in the constitutional violation. *Kentucky v. Grahm*, 473 U.S. 159, 166 (1985). "A 'policy' is a deliberate choice to follow a course of action

6

made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Shorts v. Bartholomew*, 255 Fed.Appx. 46, 57 (6th Cir. 2007) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)); *see also Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999). A "custom" is so permanent, widespread, or well-settled that it has the "force of law" and need not be formally approved. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996).

Here, Plaintiff claims that Defendant's inadequate training gives rise to § 1983 municipal liability. "The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.2005)); *see also Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

Plaintiff relies on the expert report of Dion Howells, a retired police officer retained by Plaintiff. Howells concludes that Defendants "made it part of their investigative techniques in murder prosecutions to use perjured testimony in their murder investigations." Defendants challenge Howells qualifications as an expert and argue that he is not competent to testify on "drug-related homicides in a large urban area." The Court need not make conclusions as to

whether Howells is qualified and competent because his testimony, even if accepted as true and accurate, does not create a genuine issue of material fact required to successfully counter Defendants' motion for summary judgment.

In drawing his conclusions, Howells conducted a "Google News Search" and found a 1998 Toledo Blade article reporting that charges of murder and other crimes against Ethan Walls were dismissed when Timothy Braun, the Lucas County prosecutor, stated that a critical witness had completely changed her story. Howells claims to have spoken to a defense attorney who told Howells that the witness who changed her story told the defense attorney that Forrester threatened the witness. Howells's report also draws attention to Reginald Atkins, an inmate Plaintiff met in Orient Correctional Reception Center. Atkins claims that Forrester tried to coerce him into testifying against Plaintiff at trial.

The Court makes no determination with regard to Howells's credibility. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 431 (6th Cir. 2005). However, "being an expert does not lessen the burden one has in rebutting a motion for summary judgment." *Id.* at 432. With regard to the 1998 Toledo Blade article, the hearsay statements made by a defense attorney regarding the alleged threats from Forrester does not set forth "specific facts" required to counter a motion for summary judgment. No depositions have been taken, no affidavits signed, and no court has made a ruling with regard to Forrester's alleged threats. Furthermore, it appears from the article that after the witness changed her story, the prosecutor withdrew charges against the defendant. Thus, the City did not use perjured testimony in their murder investigations in order to make convictions. Instead, the witness's changed story was used as a reason to withdraw charges against the defendant.

8

With regard to the statement made by Atkins, complaints about the alleged unconstitutional arrests and treatment of other persons in connection with Cunningham's murder do not establish a policy or custom of such action by the City. *See Peet v. City of Detroit*, 502 f.3d 557, 558 (6th Cir. 2007). Such evidence cannot be considered a "history of similar incidents."

In addition, Plaintiff presents no evidence tending to show that the City of Toledo or the police department "ignored a history of abuse and [were] clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher*, 398 F.3d at 849. Defendants' motion for summary judgment is granted for federal claims against them in their official capacities.

### 2. Individual Capacity

The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walsh v. Cuyahoga Cty.*, 424 F.3d 510, 513 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity involves a three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 901 (6th Cir. 2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted)). If the answer to all three questions is "yes," qualified immunity is not proper. The Court begins its analysis with the first question: has a constitutional violation occurred?

9

### i. Malicious Prosecution

Plaintiff's complaint states a general claim for violation of due process. In his briefs, the only due process claim Plaintiff argues is for malicious prosecution under federal law. *See Voyticky v. Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003) (noting that plaintiffs can bring malicious prosecutions under either federal or state law).

"In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify … a prosecution." *Id*. Under Ohio law, the elements of malicious prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). Furthermore, "if the lack of probable cause is demonstrated, 'the legal inference may be drawn that the proceedings were actuated by malice.'" *Thacker v. City of Columbus*, 328 F.3d 244, 260-61 (6th Cir. 2003) (citing *Tourlakis v. Beverage Distribs*., Inc., 2002 WL 31875970, at *4 (Ohio. Ct.App. Dec. 26, 2002). Probable cause for this purpose is defined as "'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged.'" *Harris*, 513 F.3d at 520 (quoting *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 166 (1960)). In malicious prosecution claims, the Sixth Circuit has generally focused on the issue of probable cause. *Spurlock v. Satterfield*, 167 F.3d 995, 1005-07 (6th Cir.1999) ("malicious prosecution of an individual and continued detention of an individual without probable cause clearly violate rights afforded by the Fourth Amendment").

10

To support his claim, Plaintiff submits (1) the September 2006 *ex parte* affidavit of Witness Norma Eaton in which she stated that "the police showed me the male they wanted me to identify while I kept pointing to the other male"; and (2) the September 1997 affidavit of Matthew Williams claiming that Forrester threatened him, Williams had no knowledge of Plaintiff's involvement in the crime, his testimony was rehearsed, and he was promised to be released from prison if he cooperated.  Plaintiff argues that Eaton's trial testimony was inconsistent because she was unable to pick out Plaintiff from a photo line up a few weeks after the crime, but capable of picking him out in a courtroom a year later.  Additionally, throughout Plaintiff's brief he argues that Judge Potter's decision, affirmed by the Sixth Circuit, is evidence of Forrester's constitutional violation.

Before responding to Plaintiff's arguments, the Court finds it appropriate to state its cognizance that in a claim for malicious prosecution, Courts do not analyze the potential unconstitutional violation of threatening witnesses, but rather whether the institution of criminal proceedings occurred with malice and without probable cause.  *See e.g. Canter v. Hardy*, 188 F.Supp 773, 790-91 (E.D.Mich 2002).  The Court shall consider such threats to the extent that they play a role in the constitutional violation that Plaintiff claims, malicious prosecution.

The legality of police conduct implicating the Fourth Amendment is reviewed by considering whether at the time of the stop, seizure, or arrest, the officer had reasonably trustworthy information sufficient to warrant a prudent man in believing that the action taken was appropriate.  *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *U. S. v. Campbell*, 486 F.3d 949, 955, 958 (6th Cir. 2007).  Here, there is no dispute that, during the investigation of the murder and before the indictment was returned, Williams contacted Forrester from prison without solicitation.  His testimony at trial was summarized as follows:

11

>He testified that [Plaintiff] stopped him about 1:00 p.m. on February 14 or 15, and 1996, and followed Williams to a car wash to talk to him. When Williams got into [Plaintiff's] car, [Plaintiff] and Phil, the owner of the car wash, were already in the car. Phil was telling [Plaintiff] that he wanted Cunningham dead for messing up something concerning drugs and money. Phil was trying to describe Cunningham for [Plaintiff] because [Plaintiff] did not know him. As they were talking, Cunningham came out of a nearby convenience store. [Plaintiff] got out of the car and started walking toward Cunningham and then returned to the car and said Don't worry about it. That nigger dead. Phil then gave [Plaintiff] half an ounce of crack cocaine as partial payment. [Plaintiff] never did talk to Williams about what [Plaintiff] had said he wanted to talk to Williams about.
>
>[Plaintiff] called Williams again on February 21, 1996 about 10:00 or 10:30 a.m. asking for some drugs. During the conversation, he said, "Ain't nobody got to worry about that one thing no more." When Williams inquired further what that mean, [Plaintiff] said, ""that nigger, Phil, he dead. . . I mean, not Phiol." Williams arranged to meet [Plaintiff] that evening to give him some drugs. When Williams approached his house around the appointed time, he saw someone crouched down low beside the house. Williams yelled at the person who then ran. Williams got in his car and chansed the person. He saw a car leaving the alley without its lights on and followed it. When he caught up with the car, he found out it was [Plaintiff] . [Plaintiff] said that Williams had scared him because he thought Williams was the police. Williams never id give appellant any drugs.
>
>Williams returned to prison on a parole violation four days later. Williams saw [Plaintiff] again in prison. Williams questioned [Plaintiff] about the rumors on the street that he killed Cunningham. [Plaintiff] stated that he would kill his mother for the right price. [Plaintiff] admitted that he was coming home one night and saw Cunningham. [Plaintiff] stopped Cunningham, made him put his hands in his pockets, and then shot him in the head. Williams testified that he first heard about Cunningham having his hands in his pockets from [Plaintiff]; but, on cross examination admitted it was general knowledge in the neightborhood. [Plaintiff] also admitted to Williams hat he was hanging around Williams['s] house that evening in February intending to rob the man Williams was going to hook him with to buy drugs. [Plaintiff] intended to shoot the man because [Plaintiff] knew that the man was not the type to just give up anything. [Plaintiff] admitted that he was going to shoot Williams too. After hearing that, Williams called Detective Forrester to tell him that appellant had admitted to killing Cunningham.

*Dale Becket v. James Haviland*, Case No. 01cv7374, *21-22 (N.D.Ohio 2001).

In his order granting habeas relief, Hon. Judge Potter concluded that Williams's testimony was the linchpin of the State's case and "the most incriminating" of any witness. *Id.* at 22-23. That Williams recanted this testimony *after* the trial does not necessarily support Plaintiff's claim

12

that probable cause was lacking. The receipt of such evidence during the investigatory stage of this case, so long as such testimony was not concocted by Defendants, is certainly enough to create reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to support Forrester's belief that Plaintiff was guilty.

Judge Potter did not grant habeas relief because Forrester violated Plaintiff's constitutional rights. Rather, habeas relief was granted for one reason: "false testimony that [Williams] gave that he received no promises or favorable treatment in exchange for his testimony was not harmless beyond a reasonable doubt." *Id.* at 22-23. Although Williams's affidavit recants his trial testimony by stating that he "had no prior knowledge of the involvement of Dale Beckett in the murder he now stand convicted of," the affidavit does not state that Defendants assisted in manufacturing the statements Williams made before or during trial.

Moreover, the portion of Williams's affidavit stating that Forrester and Anderson instructed Williams "what to testify to during the Grand Jury and Jury trial" was addressed in a previous opinion by this Court. (Doc. 109 at 8; Doc. 102 at 12). The Court ruled that "the coercive conduct in question resulted from Defendant Anderson 'acting as an advocate for the state' in that he was 'evaluating evidence, interviewing witnesses and preparing witnesses for trial.'" (Doc. 109 at 8). "When functions of prosecutors and detectives are the same . . . the immunity that protects them [from § 1983 liability] is also the same." *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993). "[I]t is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Id.* (citing *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).

With regard to Norma Eaton's statements, on September 26, 2006, Eaton testified in a sworn videotaped *ex parte* affidavit to Plaintiff's private investigator that the police coerced her into testifying against Plaintiff at his murder trial. On January 4, 2007, Eaton repudiated her

13

September 26, 2006 statement and accused Plaintiff of bribery and intimidation. On January 10, 2007, Eaton briefly attended a scheduled deposition at the Toledo Public Library and again repudiated her September 26, 2006 statements. Plaintiff claims that Eaton was escorted by the police officers she was supposed to testify against. On April 15, 2008, Eaton canceled a scheduled deposition. On February 27, 2009, Eaton attended her deposition but refused to answer any questions. Before and during the trial, Eaton's testimony only served to place Plaintiff in the vicinity of the crime. She was not the only witness to do so. Even if her testimony was incorrect from the onset, probable cause was not lacking as a result of Williams's testimony. As stated above, Williams's testimony was the linchpin of the state's case whose initial testimony created probable cause to indict Plaintiff.

For purposes of an Ohio malicious prosecution claim, "'[a]n indictment . . . is prima facie evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this.'" *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (quoting *Carlton v. Davisson*, 104 Ohio App.3d 636, 662 N.E.2d 1112, 1121 (1995)). A plaintiff can rebut an indictment by showing that "'the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular.'" *Id.* (quoting *Deoma v. Shaker Heights*, 68 Ohio App.3d 72, 587 N.E.2d 425, 428 (1990)). For the reasons stated above, the Court does not find that Plaintiff has successfully challenged the indictment at the time it was returned.

Finally, there is no evidence that Ford or Forrester had discretion in prosecuting Plaintiff and therefore, could not be held liable for maliciously instigating the criminal process. *See Radvansky v. City of Olmsted Fals*, 395 F.3d 291, 317-18 (6th Cir. 2005). Defendants' motion for summary judgment is granted for federal claims against them in their individual capacities.

**ii. Civil Conspiracy**

14

A federal civil conspiracy claim requires Plaintiff to prove "that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). Further, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983." Spadafore v. Gardner, 330 F.3d 849, 854 (2003) (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Plaintiff alleges that a conspiracy existed between Ford and Forrester to maliciously prosecute Plaintiff for murder and other crimes. Plaintiff fails to state any specific facts with regard to how Ford played a part in the alleged malicious prosecution. Also, as explained above, Plaintiff's malicious prosecution claim fails. As such, Defendants' motion for summary judgment on this claim is granted.

### B. State Law Claims

Despite Plaintiff's bad faith, false imprisonment, and civil conspiracy claims, Defendants contend that they are immunized from suit by Ohio's Political Subdivision Tort Liability Act. *See* Ohio Rev. Code § 2744.01.

#### 1. Official Capacity

"Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. The Ohio Court of Appeals has held that an action against an officer in his 'official capacity' is simply another way of pleading an action against the governmental entity itself." *Chesher*, 477 at 797 (citing *Norwell v. City of Cincinnati*, 133 Ohio App. 3d 790, 803 (Ohio Ct. App. 1st Dist. 1999). Therefore, in order to determine whether Defendants are immune in their official capacities, it must be determined

15

whether the governmental entity - in this case, the political subdivisions of the Lucas County Sheriff's Department and Lucas County Juvenile Detention Center - are immune from suit. *See id.* at 797 (noting that "[i]f official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county").

"The Political Subdivision Tort Liability Act . . . sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Carter v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998). "First, [2744.02(A)(1)] sets forth the general rule of immunity, that political subdivisions [engaged in governmental or proprietary functions] are not liable in damages for the personal injuries or death of a person." *Id*.[1] "[O]nce immunity is established . . . the second tier of analysis is whether any of the five exceptions to immunity in [2744.02(B)] apply." *Id*.[2] Finally, even if an exception applies, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in [Ohio Rev. Code § 2744.03] applies." *Id.*

---

[1] Ohio Rev. Code § 2744(A)(1) states: For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

[2] The broad immunity is subject to exceptions listed at § 2744.02(B)(1)-(5) of the Ohio Rev.Code: (1) Injuries caused by the negligent operation of a motor vehicle; (2) Injuries caused by the negligent performance of proprietary functions; (3) Injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance;(4) Injuries caused by negligence on the grounds of a building used for governmental purposes; or (5) Injuries for which liability expressly is imposed by the Ohio Revised Code.

16

In the case at bar, first, Defendants were engaged in a governmental function. *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998) (Police power is considered a government function). Second, Plaintiff has not argued that any of the exceptions under R.C.2744.02(B) apply against any Defendant. As a result, the Court grants Defendants' motion for summary judgment on the pleadings with regard to claims under Ohio law against Defendants in their official capacities.

### 2. Individual Capacity

Individual capacity immunity is properly analyzed under Ohio Rev. Code § 2744.03(A)(6). Section 2744.03 enumerates the tort liability of political subdivision employees, *see Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007); *Cotton v. McFaul*, 1993 Ohio App. LEXIS 1956, at *2 (Ohio Ct. App. 8th Dist. 1993), and provides that employees are "immune from liability for acts or omissions made in connection with a governmental or proprietary function unless the acts and omissions were [(a)] manifestly outside the scope of employment or official responsibilities; [(b)] made with malicious purpose, in bad faith, or in a wanton reckless manner; or [(c)] a section of the Revised Code expressly imposes liability." *Cotton*, 1993 Ohio App. LEXIS 1956, at *2 (citing Ohio Rev. Code § 2744.03(A)(6)). Thus, if Forrester and Ford engaged in a governmental or proprietary function, and their conduct does not fall within one of the three exceptions listed above, they are immune in their individual capacities.

With regard to wanton or reckless misconduct, "wanton misconduct is the failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 356 (Ohio 1994). Moreover, "[t]he standard for showing wanton misconduct is . . . high," *id*., and "mere negligence is not converted into wanton misconduct unless the evidence establishes a

17

disposition to perversity on the part of the tortfeasor." *Roszman v. Sammett*, 26 Ohio St. 2d 94, 96-97 (Ohio 1977). "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Fabrey*, 70 Ohio St. 3d at 356; *see also Vasquez v. Vill. of Windham*, 2006 Ohio App. LEXIS 6298, at **19-21 (Ohio Ct. App.11th Dist. 2006).

Plaintiff states no facts specifying how Ford acted with malicious purpose, in bad faith, or in a wanton reckless manner. The Court grants Defendants' motion for summary judgment on the pleadings with regard to claims under Ohio law stated against Ford in his individual capacity.

However, Plaintiff creates a genuine issue of material fact with regard to whether Forrester acted maliciously in causing witnesses Williams and Norma to falsify their testimony. Although she later repudiated it, Eaton testified in a sworn videotaped *ex parte* affidavit to Plaintiff's private investigator that the police coerced her into testifying against Plaintiff at his murder trial. In more recent depositions intended to clarify Eaton's testimony, she has either been unresponsive during the depositions or has canceled the appointments altogether. Also, Williams's affidavit states that he was "threatened" by Forrester.

If Plaintiff can show that Forrester acted with "malicious purpose" when eliciting testimony from these witnesses, Forrester is not immune from Plaintiff's claims under state law. This Court does not address the admissibility of the witnesses' statements in trial. Because the Court declines to exercise supplemental jurisdiction over the state law claims, such determinations shall be reserved for the state court in which Plaintiff may file his claims.

"The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Blakely v. United States*, 276

F.3d 853, 861 (6th Cir. 2002) (quoting 28 U.S.C. §1367(a)). When, however, the district judge dismisses all claims in which it had original jurisdiction, the district court may decline to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* at 862; *see also* §1367(c). In deciding whether to exercise supplemental jurisdiction, the court should consider "'judicial economy, convenience, fairness, and comity.'" *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 154 (6th Cir. 1996) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). When, as here, the court dismisses all federal claims before trial, the court should generally deny jurisdiction over the state-law claims. *See Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007). Accordingly, the Court dismisses without prejudice Plaintiff's state-law claims of bad faith, unlawful imprisonment, and civil conspiracy against Forrester.

**IV. Conclusion**

For the reasons stated herein, Defendants' motion for summary judgment is granted (Doc. 124) and Plaintiff's motion to strike Defendants' motion is denied (Doc. 133). Plaintiff's federal and state claims against Ford in his individual and official capacity are dismissed with prejudice. Plaintiff's federal claims against Forrester in his official and individual capacity, and state law claims against Forrester in his official capacity, are dismissed with prejudice. However, Plaintiff's state claims against Forrester in his individual capacity are dismissed without prejudice.

The following motions are dismissed as moot: (1) Plaintiff's motion to declare Witness Norma Eaton absent and unavailable to give testimony at trial and enter into evidence her *ex parte* affidavit (Doc. 117); (2) Defendants' motion in limine to exclude Norma Eaton's *ex parte* affidavit (Doc. 122), and (3) Plaintiff's motion to admit Norma Eaton's *ex parte* statement as a statement against penal interest (Doc. 123).

19

IT IS SO ORDERED.

                                             s/ *David A. Katz*
                                             DAVID A. KATZ
                                             U. S. DISTRICT JUDGE